Good afternoon and may it please the court. I'm Stephen Weissbrod of Weissbrod Metades & Copley and I'm here on behalf of Jeff Burnett and Joe Kemp. I'd like to reserve five minutes. Jeff Burnett is a retired schoolteacher and Joe Kemp is a semi-retired dentist. Their former policyholders loaned Conseco life-care policies. They surrendered the policies after Conseco breached the policies in numerous ways. Conseco did not deny that it had breached the policies when it moved to dismiss. The policies had an investment account along with a death benefit. The plaintiffs gave up their policies in order to mitigate their damages. What was the breach? What was the breach of the contract? There are numerous breaches, Your Honor, only some of which are addressed in Conseco's breaches. There was a miscalculation of the issued premium eligibility. There was a miscalculation of premiums due. There were improper deductions. Now, does this actually happen or are you talking about the letter that was sent out in October 2008 giving their, Conseco's view of how it was going to calculate things going forward? Some of the breaches arguably had not yet happened in October 2008, but very significant breaches had unquestionably happened by November 2008. That's why Conseco sent out a notice that said, you may disregard all previous notices, not just one particular notice, all previous notices without any time limitation, which meant that at that point when both plaintiffs still held their policies, Conseco was in breach of both policies because the policies expressly require in numerous places the provision of various kinds of notices and information, all of which had been countermanded by November of 2008. Well, Dr. King, there's no letter meant to disregard the November letter meant to disregard the October letter, is there? There is no evidence on what it meant. In the common sense, maybe, you know, in the regular source testimony, which is the common sense, the October letter comes out, it's, understandably, it talks to the policyholders, and the November letter comes out, perhaps it could have been clearer, but saying disregard, isn't that pretty clear? No, it isn't, Your Honor. There's been no evidence that says what it was supposed to mean or which documents it was supposed to cover. However, the plaintiffs both testified, and now we're going beyond the motion to dismiss type issue, but they both testified that, and I'm not even sure I should be talking about it, that they didn't know what was happening and what wasn't. Now, I want to stress, the motion to dismiss did not deny that it was a breach to fail to provide information. The motion to dismiss rested on only one point, and Judge Bilston has never evaluated any of the last three arguments that Conseco has raised in the context of a First Amendment complaint, which is probably 50% longer and much more detailed and much more fulsome about all of the different provisions that were breached. But I do want to make absolutely clear that even if this Court were to consider the question of whether Dr. Camp had an actual breach or just an existentatory breach, which we don't think the Court should do, that there was an actual breach, our complaint also would suffice to establish the existentatory breaches to Dr. Camp, but as to actual breach, Conseco had failed to make determinations on cost of insurance. It had failed to give notices. Well, what specific language in the policy was breached? Is it the language that says that the insurance company is supposed to provide specified reports? Excuse me. The policy, that is, I'm going to put in one that starts on PR108. There are several provisions that were breached. One can debate about whether they were breached by November 2008 in some instances because the tense of the policy isn't entirely clear, but I want to start with the notice type of provisions. First of all, under Owner, which is on page PR114, the owner enjoys the benefit of ensuring his lifetime, so it is not the case under this policy that the owner is re-entitled to performance by Conseco when the owner surrenders or when the owner dies or the beneficiary is entitled to that money. Wait, wait, wait. You're saying even if you surrender your policy? Remember that October letter? If you surrender your policy, you still have breach medicine? Is that what you're saying? It doesn't have language. Well, even Conseco agrees that you have rights after that to get your cash value. Well, of course you do. But let's assume the full cash value is paid, that there's no dispute, that is, that you have the surrender value and that it is provided in full. I think the question, I was just trying to answer the question, what were the breaches as of November 2008, Your Honor? And I don't mean to not answer your question, but you seem to suggest that even if there is a surrender, you still have rights and policy. How can that be? No, no. I was just saying that while the policy is in effect, as long as the person is alive, the person is entitled to enjoy the benefits of the policy, including the various notice provisions, which are also indicated, for example, monthly induction and monthly cost of insurance on ER 117, both require that the calculation shall be determined, one for cost of insurance, one for deductions, and there is also provision on. So your argument is that in the November 2008 letter, which said ignore prior notices, that that vacated, in effect, prior information that was provided about cost of insurance and the like, and therefore that was the breach? That was the breach, but not the only breach. The complaint has entailed numerous breaches, none of which were actually addressed in the motion to dismiss files which wanted to emphasize the able to report provision on ER 121, and there are others, Your Honors. As to whether the person still has rights under the policy, let me just ask this to follow up on Judge McGood's question. What breaches do you allege that are unrelated to the November 2008 letter? I know your view that the November 2008 letter invalidated everything that came before, but absent the November 2008 letter, do you allege any breaches? Absolutely, Your Honor. Vanishing premium eligibility was incorrectly calculated in the late 2008 period. CONSECO never actually retracted its position that vanishing premium eligibility should suddenly start including the guaranteed cash value table, even when a person was no longer entitled to a guaranteed cash value table. Just to clarify, so the CONSECO entered into a settlement agreement, in effect, with the state parties, but the settlement allowed it to go forward and do certain things that it didn't want it to do. Are you saying those steps that CONSECO took, which were permitted by the state settlement, breached the contract? Indeed, Your Honor. Unquestionably. And, Judge, let's take a brief summary judgment on that point in favor of a difference in plaintiff's current policyholders. Yes, the cost of insurance in the regulatory settlement agreement was a breach. Okay, but did that at all happen? With respect to, I guess, Mr. Kim, he had already long since surrendered the policy, so you would have to be looking just at the, I guess, November letter. Is that right? As to Dr. Kim's breaches, we argue that there was still a cost of insurance breach. It was the failure to calculate the cost of insurance, as is required under the contract, and that had occurred in November of 2008 when Dr. Kim still had the policy. But the RSA was not included until 2010. At that point, only Mr. Burnett, but not Dr. Kim, had the policy. But there were multiple breaches for both plaintiffs, which are detailed in the complaint, and Judge Elston has never reviewed count-by-count or paragraph-by-paragraph which breaches occurred at which times. This was an argument that Zico made at a prior, as to a prior, much simpler complaint. Your Honor, I do want to get to Judge Steve Wright's other point, which is what are the rights of somebody after surrender? The answer is that the advice insurance contract is no different from any other contract. After surrender, you cannot insist on performance. We agree, they agree. Where we disagree with Kinseko is Kinseko argues that the black-letter law that is established in numerous cases, including insurance cases, that you can get damages for pre-termination breaches doesn't apply here for some reason. And what these do have to say is that it doesn't apply here. Yes, Your Honor. First of all, outside the insurance context, I would recommend Odie Noble, but there are many others, Mackey, Armour, Chicago Title. But those just say if you terminate a contract voluntarily, you have a right to terminate a contract, and you still retain a right to sue for a pre-termination breach of that contract. Those cases don't address where you receive consideration in the interim. My cases, that's true, Your Honor. Not all of them do. Mackey does, and Coors does. Well, Coors is a case about the right to surrender value, it seems to me. It is not, Your Honor. That is a assertion. That's exactly what it is. It was about whether or not Mr. Coors received the appropriate cash for cash out. Absolutely not, Your Honor. I beg to differ. Mr. Coors sued, and he got his correct cash value as required under the policy, but he was entitled to a refund of expense payments. And, and this is very significant, also a determination charge, which Kiseko charged here for both plaintiffs. There is no allegation that Kiseko did not charge the surrender charge. So that is a consequential damage where the Colorado Supreme Court said because the insurance company had breached, it could not maintain that. In the Coors case, didn't the policy holder just seek the amount that she was overcharged and the termination penalty, which that's both unduly gracious and surreptitious surrender value? He sought, he did not seek the same form of damages that we did, Your Honor. To get somebody who did that, you have to look at another insurance case.  But Mackie is right on point. Donnelly involved somebody who made a decision not to continue his coverage. So he didn't surrender, he just let it lapse, but it was a conscious decision. The court found that he was entitled to consequential damages. Who is Donnelly an insurance company? Donnelly is an insurance company, Your Honor. And they distinguished it by the fact that Mackie is a Barnes case, so it's a different kind of insurance. I would like to return for the rest of my time. May it please the Court. My name is John Ernie. I represent Conceicao Life Insurance Company and the defendant appellees. And perhaps if I could, the best way to start, Your Honor, would be to pick up on a point from the previous discussion. The Rule 12b-6 motion here was not about whether or not there was a breach. It was rather about the fact that the policyholders here are bringing up one claim. It's important to focus on what that claim is. It's a claim for a recovery of money under a policy. And the policy language is clear, as is the surrender agreements, that when a policyholder is seeking a recovery under the policy, there are two binary choices that are mutually exclusive. So, even assuming a breach, first, if the policyholder wants a recovery based on the policy's death benefit, then the policyholder needs to keep the policy in force. That's under the proceeds provision, which discusses the recovery under the policy. And if the policyholder does not keep the policy in force, there can be no recovery based on the policy's death benefit. And there are a few cases suggesting that, or holding that, you could get the replacement value of the policy. So, in other words, if the policyholder was induced, as they're claiming, fraudulently or erroneously induced to drop the policy to get the surrender value, then the cost of getting a policy, a better policy, the policy of the same value as the one they were induced to drop, would be recoverable as consequential damage as that. I think there was a Tennessee case to that effect. Why wouldn't they be eligible for replacement value of the policy if they could prove that they were wrongly induced to drop the policy? Thank you for bringing that up, Your Honor. I mean, it's cases in that reply brief that we weren't able to address because it was in their reply, but we did address it at the district court level. I can cite to the record as to that. But I'm thinking that you're referring to four cases, Your Honor. Merrick, a case in Wisconsin, Confederal Assurance, and Donnelly. And all four cases are distinguished from a lot of extremely important ground, Your Honor. All four cases are what is known as wrongful determination cases, not surrender cases. That's the key. Because the surrender option is the second recovery under the policy. But I didn't see any principle of insurance law that we cited that said that unlike any other contract under insurance law, you can't get that sort of replacement value or consequential value. I didn't see that in the code. I didn't see that in a case. So I don't know why regular contract law wouldn't apply here. Maybe you can explain that. Yes, Your Honor. Regular contract law does apply here, and we are applying the policy language as well as the surrender agreement, which are both in use, both in concert. They both talk about, again, this binary option. If the policyholder wants recovery based on the death benefit, they have to keep the policy in force. If the policyholder does not keep the policy in force and surrenders the policy, which is the key distinction from those four cases, if the policyholder surrenders the policy, that's the other mutually exclusive recovery avenue, then what the policyholder gets is the return of the proper amount of cash surrender value. Why aren't you just regular principles of contract law? Someone is wrongly induced to give up a contract, or the person thinks he's contracted for widgets at one price, and then the widget maker changes their mind, able to terminate the contract and get replacement value of the contract. Good point, Your Honor. First of all, let me point out that these policies did provide for the insurer the option to raise the price. But that's a different issue. So they say that you didn't have the right you have and you exercised. That's a different question about breach. I would say he's correct that you didn't have the right to raise the policy. He bargained for one sort of policy. The insurance company wrongly changed the terms, so it was much more expensive or not as valuable. So he terminates it and then gets a replacement policy. It seems under general principles of contract law, he could get that deferential, the replacement value, minus whatever he got. The key here, Your Honor, is that unlike those four cases, there was no wrongful termination. I'm not talking about those four cases. I'm talking about general principles of contract law. This wrongful termination has to do with the breach, so we're just assuming that the insurance company wrongfully changed the terms. Here, Your Honor, we need to understand the context of these MDL cases, which are now in their ninth year. Here, the policyholders get many options, and that's the key, Your Honor, to the question you raised, which is to look at the options that the policyholders had here. If they came to the conclusion they were able to breach, thousands of policyholders kept their policies in force. That was their option. And, in fact, when a class action was brought, judges would certify that class action, and thousands of those policyholders kept their policy in force. I think my question was more just as a matter of contract law and insurance law, not necessarily specific to this case. Why is replacement value for a wrongful change in policy terms not something that's available to an insurance policy contract holder? Your Honor, permanent life insurance like this has been in effect for over 100 years. And the Ryan case from Iowa in the 19th century goes back to there. And as we point out to Judge Olson, and I'll point out to Your Honor, there has never been a case in 100-plus year history where a policyholder has surrendered their policy, and the policyholder got the correct cash spender value, and then turned around and was able to obtain that second mutually exclusive form of recovery, that is, a recovery based on the policy's death benefit. But there has been a case saying that you can't do that. It's just there hasn't been a case so openly as that. Is that what you're saying? I do not agree with that, Your Honor. We believe the cases, so we cited perhaps 13 of them that go back to the 19th century, and all make this point that when a policyholder surrenders his or her policy, he or she surrendered the policy. They were told that their insurance would be reduced, that their premiums would be raised. They were scared to have solutions. They surrendered the policy so they wouldn't suffer from those consequences. Your Honor, we submit that the policyholder had many options, as Judge Olson recognized from having presided over these MDL proceedings. That included keeping the policy in swing for damages. It included keeping the policy and bringing an injunction, as many policyholders did. And Judge Olson granted an injunction for 100 or more policyholders. There were many options, including seeking reinstatement under a policy, which the regulatory settlement agreement made provisions for. The policyholders had many options, as Judge Olson knew, as did Mr. Weisbrod. He represented the class in these previous MDL proceedings. He was there from the very beginning. His colleagues were there early on, from December 2008, to advise policyholders on their options. And, in fact, when Judge Olson certified a nationwide class in 2010, Mr. Weisbrod was their class counsel for over a year. You keep going back to these facts, and I think we're trying to do what is interesting. We're really trying to sort of peel back the layers here. But both of you are right in one regard, which is equal to the other side, that your law doesn't really apply here. It seems to me that you both wrote that way, that the law each of you cites isn't really directly on point with what we have to decide. And what I think Judges would extend it to is, is there a difference between general contract law, where you can terminate a contract and then sue for damages? Is there any reason that it shouldn't apply here? Well, first of all, Your Honor, the plaintiffs could sue for damages, even though they surrendered by arguing as a court case that they did not receive the correct amount of damages. That's not a question here. They're talking about other damages. But, Your Honor, again, my point is that we go back to the policy language, and we are applying general contract law, but it applies in criminal life insurance. There is this binariness to it. There's an either-or. The light is on or the light is off. I just don't see a case so holding. I know that's your position, but there's no case so holding. But, Your Honor, the 13 or so cases for more than 100 years do hold. When the policyholder surrenders his or her policy, all of the... We can't get death benefits. I think we understand that. But it's more... That's not what's at issue here. I mean, so the insurance policy is a valuable investment that's going to give you something at some point in time. And when the insurance company says, we're making this investment much less valuable, my question is, does the person have the option, as they do in other contract situations, to terminate it and then sue for the replacement value of what the valuable policy would have been? And that's where I don't see any law on point one way or the other other than general contract principles. Your Honor, essentially what the plaintiffs are asking for here is after having received the cash surrender value, which was this binary option, they are saying we also want the other binary option. We want a recovery in addition. No, but they're not seeking a death benefit. They're seeking a consequential benefit. Let me ask you this. If the claim that was brought in beside the language and RSA for it, and whether there's waiver that applies to you or not, if the claim was brought by way of a fraud or a UDAP or a misrepresentation claim, would you be making the same argument or would it not work? No, Your Honor, and that is key. Again, when these same plaintiffs were part of the MDL class action and Mr. Bernetta effectively took himself out of that class action by his own choice, by surrendering his policies, they were making fraud claims. They were making consumer protection claims. And that was a choice that plaintiffs made here. They decided not to make those claims here, as Judge Elston recognized in both her decision and oral argument. And in doing so, they denied themselves. They made that choice. That was another one of the choices and options available to them, which they made. But we would not be making that argument that we're making here today if they were bringing fraud claims or consumer protection claims. This is based on the policy language. And again, the fact that they got one, they got the recovery, they were entitled to the cash surrender value, and now they're seeking the other binary option, which is based on the death benefit. The death benefit of a contract is this binary option if it's a fraud-related claim, as all of you can say outside of that. It's correct. So the surrender agreement, I know there's opposing views on that, but the second part has a release of all claims contractual or extra-contractual, but only if surrender charges are waived. And so the other side argues the reasonable inference that you're not releasing if the surrender charges are not waived. Which is a term, in this case, that the parties aren't releasing all claims contractual or extra-contractual. And so that suggests that you can get a surrender, you can enter into a surrender, get the cash surrender value, and still have contractual claims. I don't really, unless it's in a very reasonable way of reading, would you disagree that you could have a contractual claim after you enter into a surrender and get the cash surrender value? Keep in mind, Your Honor, and again, the point is, yes, because under the provision that we're relying on, the one that applies here, there is a claim under the policy that the policyholder can bring. Namely, the policyholder can sign that form, surrender their policy, and make a claim under the policy for the correct amount of cash surrender value. But in that second provision that doesn't apply here, where there is a waiver of surrender charges, then all claims are waived, not just that contractual claim, but also extra-contractual claims. You say that was by force of law. Why would you even need that? That was just billed in suspenders. Because your argument to us here is, you don't need to have that second paragraph of a release, because once you've taken the cash surrender value, you've waived all of your claims, other than for the correct amount of the cash surrender value. Isn't that your position? Yes, the surrender agreement does indeed give both parties certainty that already exists in the policy itself. But again, that certainty just works up into both parties, that they can see, again, these two binary options. And the provision we're relying on says, if you surrender your policy, policyholder, you can get the correct cash surrender value. That you can get. But we want you to understand that you do not get the death benefit, that other usually exclusive recovery under the agreement, and you cannot get any other recovery under the policy. But it doesn't really say that in the first section. It doesn't say that in so many words. It doesn't really say that at all. Or in the policy, it doesn't spell that out, does it? It does, Your Honor. What language specifically are you pointing to? Again, in the clause we're relying on, the first sentence, one of the first sentences, says that the policyholder agrees and understands that if they surrender the policy, they will get no coverage or insurance under the policy ceases. And it says no death benefit. That option over there is no death recovery. It's no longer available to you. It doesn't say any breach of contract, or it doesn't waive all other contractual claims. It does, Your Honor, then say that your full recovery, the recovery for the policyholder under the policy for a surrender, is the policy's cash surrender value on the date of surrender. So you get this option, but not that option. I've taken you over your time right there. Yeah, I just wanted to ask a quick question. You just gave a statement that you did not raise an issue straight through your file. In your motion to dismiss, the first thing I had in mind, why should this court hear those issues on this appeal? Yes, Your Honor, it's because on a motion from a dismissal,  this court certainly has the power and jurisdiction to hear all grounds for dismissal, even the one that was not the basis for a dismissal below. Did you raise this in the lower court? The argument, various arguments were raised at different times in the lower court, Your Honor. But what brings us here today from the Rule 12b6 motion was, again, based on the idea of binary choices or recoveries available to the plaintiffs. Thank you. I see Jack. Because Casico has agreed that the common law rules apply, unless there is policy language that I would like to review closely, the policy language. The only provision that Casico has pointed to to say that you have this binary option is the proceeds provision. It's on ER 121. It says, proceeds means the amount payable on the surrender of this policy or upon the death of the insured. The proceeds payable on death will be the death benefit. If the policy is surrendered, the proceeds will be the net cash value. That's it. There's nothing about viability, let alone claim. The word viability does not appear in the contract. There's nothing about breach of contract. There's nothing about damages. There's nothing about liquidated damages. There's nothing about waiver. There's nothing about release. The policies also provide that they terminate whenever the owner requests that the coverage terminate. That's on ER 121. And it provides that all elections, designations, exchanges, and requests must be in a written form satisfactory to the company. That's also on ER 121. That's why everyone uses the Casico form, because they have to use the form acceptable to the company. That isn't a new contract. It isn't part of the contract. The policy says that it can only be amended in writing, and this doesn't purport to be an amendment of the contract at all. Now, I do want to get to one other point, which is that definitions of net cash value and so on also do not say that they are the value that somebody receives in the event of a breach. They are simply talking about what the company is supposed to do when it performs. Now, we have a theory of damages. Maybe we'll win, maybe we'll lose. But disputes over damages are not ordinarily a basis for dismissing a case before there's been any discovery or expert testimony. However, we did allege that the valuation method we used is very similar to the valuation Casico itself used when it decided to do this. On the law, it is true that there is no case exactly on point involving somebody who surrendered. But all the components are well supported by many cases. Exercising termination rights doesn't mean you lose pre-termination breach of contract claims. Terminating a life insurance policy does not extinguish pre-termination contract breaches. That's not only Coors, but also Donnelly. The only difference between Donnelly and here is that in Donnelly, the policyholder let his policy collapse deliberately rather than turning it over. Accepting a payment does not eliminate the claim. That's Mackey and Coors. Mackey is a case but a warrant, but it's still a case. And so, Your Honors, Casico is asking that you find that Chuck Burnett had to put $35,000 at risk and Dr. Camp $99,000 at risk in order to challenge the breaches. Immunizing Casico from contract breaches that led to 40% of all lifetime policyholders to relinquish their insurance assets would be unfair to our plaintiffs. If the court were to affirm, it would set a dangerous precedent and write a road map for all life insurers who want to get rid of elderly people when they are no longer profitable. So I'm not bringing a fraud claim. Who are you adopting? Your RSA. Clearly, you could have done that. On paper, you could have done it, whether the RSA would have included it or not. And you run in a broad class, which may be what happened here. But clearly, I think probably about, you know, the insurance interest is going to be turned upside down here. It certainly could be addressed by bringing the right kind of claim. In some states. There are states that you can't bring a claim for fraud or misrepresentation. Whether these facts would establish a fraud claim varies significantly from state to state. I'm not sure that would work.  Like any contracting party, Your Honor, life insurance policyholders are entitled to have their insurers, their counterparties, perform. And when the other party does not perform and breaches, as we can say, goes alleged to have done blatantly and for the purpose of conducive, shock-lapse, widespread terminations, that should not be countenanced. And body know, body know, addresses that point in the context of, I believe it's an instruction contract, not a life insurance contract, but it's the exact same. Maybe it says you, of course, should not reward breaching parties by failing to allow consequential damages for pre-termination breaches. And that is the rule of this Court. Your Honor. Thank you, Your Honor. Thank you. In the case of Bernadette, did you have the presence of what is called an insurgent?
judges: D.W. Nelson, Ikuta, Seabright